UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-14016-CANNON/MAYNARD
(CASE NO. 21-CR-14021-CANNON/MAYNARD)

**GARRETT MICHAEL PAKO,**

   Movant,

v.

**UNITED STATES OF AMERICA,**

   Respondent.
_____/

## REPORT RECOMMENDING DENIAL OF CLAIM ONE OF MOTION TO VACATE SENTENCE UNDER § 2255

**THIS CAUSE** is before me upon referred Claim One of Movant Garrett Michael Pako's *pro se* Motion under 28 U.S.C. § 2255 to vacate his criminal conviction ("Motion"). On October 22, 2021, Movant pled guilty to attempted coercion and enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. §§ 2422(b) and 3261(a). On January 6, 2022, the Honorable Aileen M. Cannon sentenced Movant to a term of 120 months in prison, which was the minimum mandatory sentence permitted by law. Movant's Motion challenges his conviction and sentence based on three instances of alleged ineffective assistance of his trial counsel: (1) counsel failed to properly consult about and file an appeal (Claim One); (2) counsel failed to raise a jurisdictional challenge (Claim Two); and (3) counsel failed to challenge a $5,000 JVTA assessment (Claim Three). DE 1.

On April 23, 2024, Judge Cannon issued a comprehensive Order denying Claims Two and Three on the merits and referring Claim One to me to conduct an evidentiary hearing and issue a Report and Recommendation. DE 7. Following my receipt of pre-hearing briefing on Claim One,

DE 16, DE 19, DE 20, I held an evidentiary hearing on July 31, 2024. Upon careful review of the briefing, the testimony and evidence introduced at the evidentiary hearing, the credibility of the witnesses, the argument of counsel, and all pertinent portions of the underlying criminal file and related civil file, I recommend that Claim One of the Motion be **DENIED** for the following reasons.

## BACKGROUND

On May 27, 2021, a federal grand jury returned a two-count Indictment charging Movant with distribution of visual representations of the sexual abuse of children, in violation of 18 U.S.C. §§ 1466A(a)(2), 2252A(b)(1), and 3261(a) (Count One), and attempted coercion and enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. §§ 2422(b) and 3261(a) (Count Two). CR DE 3.[1] The charges stem from acts taking place in Japan while Movant was employed there as a Department of Defense contractor. CR DE 3. On May 28, 2021, a warrant was issued for Movant's arrest and on June 11, 2021, Movant was arrested in Japan. CR DE 4 (Arrest Warrant), CR DE 60 (Presentence Investigation Report). Prior to plea and sentencing, Movant was represented by an Assistant Federal Public Defender, but then he elected to retain private counsel, Blair T. Jackson, who represented Movant at the change of plea and sentencing phases of the proceeding.

On October 22, 2021, Movant appeared for a change of plea hearing before me. Movant swore under oath before me that he was pleading guilty to Count Two; that he understood that the minimum penalty was ten years' imprisonment; and he understood that the maximum penalty was life in prison. CR DE 67 at 12-13 (Change of Plea Hearing Transcript). As stated in the plea agreement and as discussed at the hearing, Movant agreed to waive all appeal rights conferred by

---

[1] Entries in the instant civil proceeding will be referred to as [DE] followed by the docket entry number. Entries in Movant's underlying criminal proceeding will be referred to as [CR DE] followed by the docket entry number.

18 U.S.C. § 3742, unless the sentence exceeded the statutory maximum or resulted from an upward departure or variance from the guideline range. *Id*. at 13; CR DE 50 ¶ 13 (Plea Agreement). The Government agreed to dismiss Count One after sentencing and to recommend a two-to-three-level reduction for acceptance of responsibility. CR DE 50. Movant agreed with the Government's factual proffer. CR DE 67 at 20. I issued a report recommending that Movant's plea of guilty to Count Two of the Indictment be accepted; that he be adjudicated guilty of this offense; and that a sentencing hearing be held for final disposition of this case. CR DE 52. On November 8, 2021, Judge Cannon adopted my report and accepted Movant's plea of guilty. CR DE 55.

Sentencing was held before Judge Cannon on January 6, 2022. CR DE 62. Judge Cannon asked and Movant confirmed that he had discussed his plea agreement with counsel. CR DE 68 at 3 (Sentencing Transcript). Judge Cannon asked Movant if he needed additional time to speak with his attorney, and he replied that he did not. *Id*. Judge Cannon then expressly advised Movant that he "has the right to appeal the sentence imposed," and that "[a]ny notice of appeal must be filed within 14 days after the entry of the judgment." *Id*. at 17. Judge Cannon sentenced Movant to the mandatory minimum sentence of ten years' (120 months') imprisonment to be followed by 20 years' supervised release, sex offender special conditions, a $5,000 JVTA special assessment, and a $100 special assessment. CR DE 63 (Final Judgment). Movant did not file a direct appeal.

On January 23, 2023, Movant filed the instant *pro se* § 2255 Motion. DE 1. On April 23, 2024, Judge Cannon resolved Claims Two and Three on the merits, set Claim One for an evidentiary hearing, appointed counsel to represent Movant, and referred Claim One to me to hold the evidentiary hearing and issue a Report and Recommendation. DE 7.

In Claim One, Movant asserts that his trial counsel failed to properly consult Movant about his appellate rights. DE 1 at 7-11. Specifically, Movant argues (1) he was not advised of his

3

appellate rights before he entered his plea, (2) he was not advised of his limited appellate rights after agreeing to the appeal waiver, and (3) he was not advised of his appellate rights after his sentencing. DE 16 (Movant's Pre-Hearing Memorandum). Movant asserts that he "wanted to" file an appeal to assert "that the United States Government had no jurisdiction to pursue charges against him for a crime that occurred in Japan by a Japanese national." DE 1-1 at 10. In response, the Government argues that this claim should be denied because Movant never asked his counsel to file a Notice of Appeal nor was there an objective basis for him to do so. DE 5.

In her Order, Judge Cannon found Movant entitled to an evidentiary hearing on Claim One "because his claims are 'not affirmatively contradicted by the record.'" DE 7 at 11 (quoting *Aron v. U.S.*, 291 F.3d 708, 715 n.6 (11th Cir. 2002)). "At the hearing, Movant may proffer evidence that counsel failed to adequately consult with Movant about filing an appeal" and Movant "has 'the burden of sustaining his contentions by a preponderance of the evidence.'" *Id.* (quoting *Tarver v. U.S.*, 344 F. App'x 581, 582 (11th Cir. 2009) (quoting *Wright v. U.S.*, 624 F.2d 557, 558 (5th Cir. 1980)).

On July 31, 2024, I held an evidentiary hearing to address Movant's claim that his counsel failed to adequately consult with him about his appellate rights. At the hearing, Movant testified and did not introduce any exhibits. The Government called Movant's trial counsel, Blair T. Jackson, and introduced the transcript from the change of plea hearing (Govt. Ex. 1), the transcript from the sentencing hearing (Govt. Ex. 2), Movant's Plea Agreement (Govt. Ex. 3), Mr. Jackson's calendar concerning Movant (Govt. Ex. 4), and the Government's response to the Standing Discovery Order (Govt. Ex. 5). All exhibits were admitted. The matter is ripe for review.

**STANDARD OF REVIEW**

  A.  *§2255 Generally*

  Because collateral review is not a substitute for appeal, the grounds for collateral attack on a final judgment under 28 U.S.C. § 2255 are extremely limited. Under § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. A district court is authorized to grant § 2255 relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C § 2255(a). If a court finds a claim under § 2255 valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner, grant a new trial, or correct the sentence." 28 U.S.C. § 2255(b).

  Relief under § 2255 is reserved for transgressions of constitutional rights, and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *See Lynn v. U.S.*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted); *see also U.S. v. Frady*, 456 U.S. 152, 165 (1982). A § 2255 movant "bears the burden to prove the claims in his § 2255 motion." *Rivers v. U.S.*, 777 F.3d 1306, 1316 (11th Cir. 2015); *see also Beeman v. U.S.*, 871 F.3d 1215, 1221–23 (11th Cir. 2017). If "'the evidence does not clearly explain what happened … the party with the burden loses.'" *Beeman*, 871 F.3d at 1225 (quoting *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001)). A § 2255 movant will not be entitled to relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'" *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted).

### B.     *Ineffective Assistance of Counsel*

A claim of ineffective assistance is evaluated against the standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, a movant must prove that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Id.* at 687. A movant has the burden to prove both prongs of *Strickland* and a court "'need not address both prongs if the petition has made an insufficient showing on one of them.'" *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1254 (11th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697).

Performance is deficient when "it f[alls] below an objective standard of reasonableness and [i]s outside the wide range of professionally competent assistance." *See Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011). Under the prejudice prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). The only question is "whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Id.* Counsel is presumed to have acted reasonably. *Strickland*, 466 U.S. at 690. A reviewing court "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990).

A movant shows prejudice if "a reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A movant must show more than "the error had some conceivable effect on the

6

outcome of the proceeding." *Id.* at 693.

The representations of a movant at a plea hearing, as well as the district court's findings based on those representations, "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (superseded by the AEDPA on other grounds). Those representations made under oath at the plea hearing "carry a strong presumption of verity." *Id.*

## **DISCUSSION**

In Claim One, Movant alleges his trial counsel provided ineffective assistance of counsel by failing to properly consult Movant about filing an appeal. DE 1. Specifically, Movant claims Mr. Jackson failed to advise him of his appellate rights before his plea or of his limited appellate rights after agreeing to his plea agreement.[2] *Id.*, DE 16 at 1. Movant further claims Mr. Jackson failed to consult with him about an appeal following his sentencing. DE 16. Ultimately, I find these assertions to be without merit.

In her Order, Judge Cannon succinctly sets out the legal standard governing Claim One:

> "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citation omitted). However, when a defendant has not instructed counsel one way or the other to file an appeal, the question of whether counsel performed deficiently by not filing a notice of appeal "is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal." *Id.* "Consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* Consultation requires more than just asserting the view that an appeal will not succeed. *Thompson v. United States*, 504 F.3d 1203, 1207 (11th Cir. 2007).
>
> Movant asserts that counsel failed to consult with him about an appeal, not that Movant directed counsel to file an appeal and he failed to do so. DE 1 at 4, DE 1-1 at 10. In this situation, "the court must in turn ask a second, and subsidiary question, whether counsel's failure to consult itself constitutes deficient

---

[2] At the evidentiary hearing, Movant claimed that Mr. Jackson told him that signing his plea agreement would prevent any appeal whatsoever, when in fact he retained limited appellate rights. Tr. 9.

7

performance." *Flores-Ortega*, 528 U.S. at 480. To determine whether counsel had a duty to consult, a court must consider all of the information that counsel knew or should have known. *Id.* "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* (citing *Strickland*, 466 U.S. at 690). A "highly relevant factor" is "whether the conviction follows a trial or guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* Additional factors "the court must consider" are "whether the defendant received the sentence he bargained for as part of the plea and whether the plea expressly waived some or all appeal rights." *Id.*

DE 7 at 8-9.

Thus, as noted by Judge Cannon, the first question is whether Mr. Jackson consulted with Movant about an appeal. Movant says Mr. Jackson did not. Movant says Mr. Jackson inaccurately advised him that he could not appeal due to the appeal waiver in his plea agreement and failed to meet with him at all after the sentencing hearing. Tr. 9, 14. Mr. Jackson's testimony directly contradicts Movant's claim. Mr. Jackson testified that he explained the appeal waiver in the plea agreement to Movant before the change of plea hearing by telling movant that the waiver meant he could appeal only if he were sentenced above the maximum penalty, if he received an upward departure, or if protocols were not followed to the letter by the magistrate or district judge. Tr. 67. Mr. Jackson told Movant that the appeal waiver "severely limited his right to appeal," but he did not tell Movant that he was giving up all rights to appeal if he signed the plea agreement. Tr. 78-80. Mr. Jackson also testified that he met with Movant after the sentencing hearing, within the 14-day appeal window, and discussed the "merits" and "pitfalls" of filing an appeal. Tr. 59-60.

This conflicting testimony about whether counsel consulted with Movant about an appeal requires me to make a credibility determination.[3] After considering Movant's testimony in the

---

[3] Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses. *United*

8

context of the record and observing his demeanor, as well as the testimony of Mr. Jackson, I find that Movant's testimony is not credible for several reasons.

First, Movant's claim that he did not understand his appellate rights under the appeal waiver is belied by the record. At the change of plea hearing, I specifically advised Movant about his right to appeal in light of his appeal waiver:

> Now paragraph 13 is very important. It's what we call an "appeal waiver," so I'm going to read this paragraph to you in its entirety and then ask you if you understand it and agree to it and have talked to your lawyer about it. Paragraph 13 says that the defendant is aware that Title 18, United States Code, Section 1291 and Title 18, United States Code, Section 3742 afford the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 1291 and 3742 to appeal any sentence imposed including any restitution order or to appeal the manner in which the sentence was imposed unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure or an upward variance from the advisory guideline range the court has established at sentencing.
>
> The defendant further understands that nothing in this agreement shall affect the Government's right and/or duty to appeal, as set forth under federal law; however, if the United States appeals the defendant's sentence, the defendant shall be released from the above waiver of his right to appeal his sentence.
>
> The defendant further hereby waives all rights conferred by 28 U.S.C., Section 1291 to assert any claim that, number 1, the statute to which the defendant is pleading guilty to is unconstitutional; and number 2, the admitted conduct does not fall within the scope of the statute of conviction.
>
> Now, Mr. Pako, do you understand that provision, sir?

CR DE 67 at 12-13. Movant said that he understood. *Id*. at 13. Then, the following exchange occurred:

> The Court: Do you agree with it -- do you agree to it?

---

*States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (citing *Viehman v. Schweiker*, 679 F.2d 223, 227-28 (11th Cir.1982)).

> Movant: I agree to it, Your Honor.
>
> The Court: All right. And were you able to talk with your lawyer about giving up your right to appeal under the circumstances described in this paragraph?
>
> Movant: Yes, Your Honor.

*Id.* I returned to the appellate waiver towards the end of the plea hearing:

> The Court: The waiver of your right to appeal, do you remember that?
>
> Movant: Yes, Your Honor.
>
> The Court: Do you understand that by entering a plea agreement that contains that appeal waiver, you will have waived or given up your right to appeal all or part of the sentence imposed except under the limited circumstances described in that appeal waiver?
>
> Movant: Yes, Your Honor.

*Id.*

Movant's claim that he did not understand there were limited circumstances in which he could appeal after signing the appeal waiver is not credible since I explained those limited circumstances to him at his plea hearing, he told me that he understood, and when we read the provision again at the evidentiary hearing, he was able to understand and explain it. Tr. 31-32.

Further, at sentencing, Judge Cannon also explained to Movant in the plainest terms that he had a right to appeal within fourteen days. CR DE 68 at 17. Yet, Movant did not ask the Court how he could appeal, despite his purported "belief" that he had waived all rights to appeal. Tr. 14. Now, Movant simply claims he "didn't know he could do it." *Id*.

Second, significant contradictions exist between Movant's testimony and Mr. Jackson's testimony, and Movant's version is again contradicted by his statements to me at his change of plea hearing, which causes me to doubt his truthfulness to the Court. For example, Movant

testified at the evidentiary hearing that Mr. Jackson never reviewed any of the evidence or discovery in the case with him while representing him in the underlying criminal matter. Tr. 22-3. Movant insisted that he asked Mr. Jackson several times about his discovery before and after he changed his plea, but Mr. Jackson refused to show it to him. Tr. 24, 34, 37. In response to my direct questions, Movant testified that he was never shown any of the evidence the Government had amassed against him. *Id*. He never saw any text messages, videos, or other evidence seized from his phone or computer by the Government. *Id*. Movant was adamant that no evidence was shown to him whatsoever by his trial counsel.

Mr. Jackson, on the other hand, testified that he met with Movant to discuss the case about six times,[4] And he specifically recalled reviewing the discovery with Movant. Tr. 46-51. Mr. Jackson recalled converting some of the electronic evidence to paper documents to take to the jail to show Movant. Tr. 47. They met in person at the jail and Mr. Jackson showed Movant the evidence. Mr. Jackson also remembered showing Movant discovery during their videoconference meetings. Tr. 51. He recalled sharing his screen and asking Movant "can you see this" or "can you see that" as they looked at the discovery together on the shared video screen. *Id*. Mr. Jackson said he reviewed the discovery with his client, and they discussed what evidence in the case was damaging and what was not. Tr. 46.

Mr. Jackson's testimony that he reviewed discovery with Movant is consistent with my discussion with Movant at his change of plea hearing. At the change of plea hearing, I asked Movant if he had reviewed all the documents, discovery, and evidence with his trial counsel, to

---

[4] Movant believes he met with Mr. Jackson five times outside of court appearances. Tr. 6. The Government also admitted into evidence Mr. Jackson's calendar entries concerning Movant's criminal case, which show four times. Mr. Jackson met with Movant by zoom, however, Mr. Jackson does not believe that calendar encompasses all his meeting with Movant. Tr. 6; Govt. Exhibit 4.

which he replied "[y]es, your honor." CR DE 67 at 6. Such "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *accord United States v. Gonzalez–Mercado*, 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true."). It is simply not credible that Movant would have stated at the change of plea hearing that his lawyer had reviewed evidence and discovery with him if in fact his lawyer had not.[5] Nor is it credible that Movant would plead guilty to a charge carrying a penalty of 10 years' imprisonment to life without seeing any of the government's evidence against him. On the other hand, Mr. Jackson's testimony on this issue was specific, credible, and consistent with professional standards of criminal defense practice. Movant's lack of candor about whether Mr. Jackson showed him his discovery causes me to doubt his truthfulness about their discussions regarding appeal.

I also do not find Movant's claim that he never met with Mr. Jackson after his sentencing hearing to be credible. Movant testified at the evidentiary hearing that after his sentencing hearing he did not speak with Mr. Jackson again and had no opportunity to do so. Tr. 14-15. However, Mr. Jackson testified that he met with Movant within 14 days after the sentencing hearing and they discussed the relative merits and potential pitfalls of filing an appeal. Tr. 59. Specifically, Mr. Jackson recalled explaining to Movant that even if an appeal was granted, Movant—who had received the mandatory minimum sentence—could receive a higher sentence at a new sentencing

---

[5] Movant claims that at the change of plea hearing, Mr. Jackson took him aside and surreptitiously advised him to go along with whatever he was asked and state that he understood and agree to any questions asked at the hearing. Tr. 11. Movant essentially claims Mr. Jackson told him to lie. I do not believe Movant's statements in this regard. *See Luzula v. United States*, No. 14-20221-CR, 2018 WL 6990750 at *17 (S.D. Fla. Nov. 29, 2018), *report and recommendation adopted*, No. 17-22422-CIV, 2019 WL 161493 (S.D. Fla. Jan. 10, 2019) (citing *Gaddis v. United States*, 2009 WL 1269234, *5 (S.D. Ga. 2009) ("As a matter of public policy, no court should tolerate a claim of this kind, wherein the movant literally insists in his § 2255 filings that he lied during the Rule 11 hearing .... Nor should such a movant find succor in claiming, as [Movant] implies here that 'my lawyer told me to lie.'")).

hearing. Tr. 60. They also discussed the possibility of a reduced sentenced based on information Movant wanted to provide to the Government. Movant gave Mr. Jackson the information, which Mr. Jackson provided to the Government. Tr. 62-63. The Government responded that the information was "stale" and would not serve as a basis for a motion for a reduced sentence. Tr. 62. Considering Mr. Jackson's specific and credible recollection of meeting with Movant after the sentencing hearing, I do not believe Movant's testimony.

Consequently, Movant's claim that Mr. Jackson failed to properly consult with him about filing an appeal is not credible and should be denied. Mr. Jackson's credible testimony establishes that he adequately explained the appeal waiver and Movant's limited appellate rights, and Movant understood this information as confirmed to me during the colloquy at his change of plea. *Id*. Further, after sentencing, Mr. Jackson met with Movant and explained to him the potential pitfalls of an appeal and that even a successful appeal would not dismiss the case or find him not guilty. Tr. 59-64 (testifying that he told Movant "Be careful what you wish for" and even if an appeal is successful, "maybe we are back at square one"). Mr. Jackson testified that had Movant asked, he would have filed an appeal because that is his typical practice. However, Movant never expressed an interest in appealing. Tr. 59-60. Mr. Jackson's testimony is credible, and I find that he adequately consulted with Movant about an appeal.

Movant has therefore failed to establish that his attorney's performance was constitutionally deficient. Because Movant fails to satisfy *Strickland's* first prong, the second prong need not be reached. *See Strickland*, 466 U.S. at 697, *see also Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013). As such, Movant is not entitled to relief on Claim One.

## CERTIFICATE OF APPEALABILITY

A movant seeking to appeal a district court's final order denying his motion to vacate has no absolute entitlement to appeal and must obtain a certificate of appealability ("COA") to do so. *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009). A COA should issue only if the movant makes "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). Where a district court has rejected a movant's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Judge Cannon previously denied a COA as to Claims Two and Three. DE 7 at 18. Here, after review of the record, a COA should likewise be denied as to Claim One as there has been no substantial showing of the denial of a constitutional right and reasonable jurists would not find the assessment of Claim One debatable or wrong.

## RECOMMENDATION

Based on the foregoing, I respectfully **RECOMMEND** that Claim One of Movant's Motion to Vacate his sentence [DE 1] be **DENIED**, and no COA should be issued.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Aileen M. Cannon. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained

in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 20th day of September, 2024.

                                                      SHANIEK M. MAYNARD
                                                      U.S. MAGISTRATE JUDGE